**Merritt DICKSTEIN, Plaintiff, Appellant,**

v.

**Edmond duPONT et al., as they are partners of Francis I. duPont & Co., Defendants, Appellees.**

No. 7808.

United States Court of Appeals, First Circuit.

June 2, 1971.

**784**

C. Keefe Hurley, Boston, Mass., with whom Earle C. Cooley, David S. Mortensen, Gary W. Carlson, and Hale & Dorr, Boston, Mass., were on brief, for plaintiff, appellant.

James C. Heigham, Boston, Mass., with whom William Diller and Choate, Hall & Stewart, Boston, Mass., were on brief, for defendants, appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

■ Merritt Dickstein, employed as a "registered representative" by Francis I. duPont & Co., a member of the New York Stock Exchange, helped obtain the Valle's Steak House chain as a financial and underwriting client for duPont. He received a "finder's fee" of $2,000, which he claimed was "grossly inadequate". After an unsuccessful demand on duPont for a "fair and reasonable finder's fee", Dickstein brought this diversity action in federal court, seeking damages in the amount of $200,000 for breach of contract. DuPont did not file a responsive pleading, but instead moved under the Federal Arbitration Act, 9 U.S.C. § 3, to stay the action pending arbitration. After a hearing before the district court, duPont's motion was granted, 320 F.Supp. 150, and Dickstein appealed.[1]

DuPont's motion was based on paragraph 34(j) of Dickstein's "Application for Approval of Employment" to the New York Stock Exchange (NYSE), pursuant to rule 345(a) (1) of the Exchange requiring registration with the NYSE of all persons seeking employment as a "registered representative". NYSE Form RE–1 Paragraph 34(j) states:

"I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the New York Stock Exchange."

Dickstein questions the applicability of the Federal Arbitration Act to his situation and the enforceability of the arbitration clause itself.

■■ The Application was submitted jointly to the NYSE by duPont as

---

1. The district court's action is appealable as a final order under 28 U.S.C. § 1291. Chatham Shipping Co. v. Fertex S. S. Corp., 352 F.2d 291, 294 (2d Cir. 1965); 9 Moore's Fed.Practice ¶ 110.20 [4.–1] (1) (2d ed. 1970). The district court also denied appellant's motion to stay arbitration. Although appellant formally appealed from this ruling as well, he did not press the matter at oral argument, recognizing problems with the appealability of such a ruling. See Greater Continental Corp. v. Schechter, 422 F.2d 1100 (2d Cir. 1970); 9 Moore's Fed. Practice ¶ 110.20 [4.–1] (3) (2d ed. 1970). In any case, the same issues are raised by both court orders, and the New York Stock Exchange has notified the appellee that it will not process its arbitration claim pending completion of this phase of the litigation in the federal courts.

"applicant" and Dickstein as "candidate". As a condition precedent to his employment by duPont, the application was an integral and mutually binding part of appellant's employment arrangement with duPont. Given this conclusion, appellant's argument that the promise to arbitrate disputes was not part of a "contract evidencing a transaction involving commerce", 9 U.S.C. § 2, fails, for it is clear that the creation of an employment relationship which involves commerce is a sufficient "transaction" to fall within section 2 of the Act. *Cf.* Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 200–201, 76 S.Ct. 273, 100 L.Ed. 199 (1956); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Our resolution of this question also disposes of appellant's argument that the appellees did not have standing to invoke the arbitration provision. Under 9 U.S.C. § 3, the district court shall stay its proceedings "on application of one of the parties". The term "party" denotes either a party to the civil suit, which would include duPont, or a party to the arbitration provision, which under our above analysis of the "contract" would also include duPont. NYSE Constitution, Art. VIII, § 6.

Equally unavailing is appellant's argument that he was a worker "engaged in foreign or interstate commerce" within the exceptions to the Arbitration Act set out in section 1. 9 U.S.C. § 1. Courts have generally limited this exception to employees, unlike appellant, involved in, or closely related to, the actual movement of goods in interstate commerce. Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers, 207 F.2d 450, 452–453 (3d Cir. 1953); Signal-Stat Corp. v. Local 475, etc., 235 F.2d 298 (2d Cir. 1956), cert. denied, 354 U.S. 911, 77 S. Ct. 1293, 1 L.Ed.2d 1428 (1957), reh'g denied, 355 U.S. 852, 78 S.Ct. 7, 2 L.Ed. 2d 61 (1957). Finally appellant raises a charge of default on the part of duPont in failing to file a formal complaint in arbitration until six months after this suit was commenced. This court's decision in Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968), where an 18-month lapse between the filing of the action and the motion for a stay was held insufficient to constitute waiver or default, supports a contrary conclusion. Furthermore, appellant, who was informally notified of duPont's arbitration claim shortly after this suit was begun, has alleged no prejudice from the half-year delay.

The second issue—the legality, and therefore the enforceability, of the arbitration agreement entered into by appellant—was injected into the case only after the complaint was filed and appellee called appellant's attention to the arbitration condition he had accepted in applying for employment. Subsequently, appellant's attorney, on being sent a copy of the Application for Approval of Employment form, and on being informed that Rule 345 of the Exchange would be violated by failure to arbitrate, responded that appellant would arbitrate but asserted the position that the requirement and enforcement of the Application violated sections 1 and 2 of the Sherman Antitrust Act.

The district court, noting the grant of self-regulatory authority to stock exchanges under the Securities Act of 1934, 15 U.S.C. § 78a et seq., *see* Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), held (1) that it was not "readily apparent" that conditioning approval of employment on submission to arbitration would result in unreasonable restraint of competition and (2) that, even assuming such restraint, such a requirement pursuant to Exchange rules approved by the S.E.C. "does not derogate from the self-regulatory grant of the Securities Act."

In arguing that his employment contract is, at least insofar as the agreement to arbitrate is concerned, illegal because it violates the antitrust laws, appellant is in the same position before this court as a defendant to a contract action who argues that his contract is

void because it violates the antitrust laws. Such attacks by way of defense are not encouraged in the federal courts: "As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court." Kelly v. Kosuga, 358 U.S. 516, at 518, 79 S.Ct. 429, at 431, 3 L.Ed.2d 475 (1959) (footnote omitted).[2] There are several reasons for this disfavor. First, the availability of such a contract defense may be utilized by contracting parties to obtain the benefits of a contract without consideration. In Kelly, for example, a purchaser of goods failed to complete payment, and set up an antitrust defense to the seller's contract action for the purchase price. In this case, appellant accepted employment under the allegedly illegal contract and raised the antitrust question only when it no longer suited him to comply with his agreement. The Court has refrained from extending judicial sanction to the avoidance of private contracts where to do so is unnecessary. See Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 751–757, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947); D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520 (1915); Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679 (1902).

As a second reason for the Kelly policy, the Court has noted that an antitrust defense to contract actions is generally unnecessary to achieve compliance with the antitrust law. The express remedies of those laws do not require supplementation by a defense in contract actions. Kelly, supra 358 U.S. at 519, 79 S.Ct. 429. Finally, the ready availability of

such defenses would tend to prolong and complicate contract disputes. In this case, for example, an attempt to prove that the Stock Exchange rule resulted in an unreasonable restraint of trade would involve a massive and lengthy process of discovery plus a lengthy and complex trial. To convert a fairly simple contract dispute into such an unwieldy process seems wasteful. Moreover, the possibility of utilizing the threat of expensive litigation of complex antitrust issues as a contract defense could be used as a weapon by disgruntled contracting parties, were they able easily to litigate such issues.

■ Despite these policy reasons against litigating antitrust defenses in contract disputes, Kelly does not hold that no such defenses can be raised. Kelly, supra at 520, 79 S.Ct. 429. But antitrust defenses are allowed only in cases where the intrinsic illegality of the contract is so clear that enforcement would make a court party to the precise conduct forbidden by the law. E. g., Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 (1909).[3] See generally J. Scott, Antitrust and Trade Regulation Today: 1969 at 174–77 (1969). In the instant case, the alleged antitrust violation does not even seem to be clear to appellant, much less to the court.

Appellant's attempt to make the linkage is the following:

"A 'contract', such as the Application which requires a vast multitude of people with omnipotent control and impact upon the economy of the United States, to foreswear their basic rights to fundamental justice (e. g., the right to a jury trial; the right to

2. See Sun Oil Co. v. Vickers Refining Co., 414 F.2d 383, 390 (8th Cir. 1969); Sunshine Packers, Inc. v. American Can Co., 395 F.2d 86 (5th Cir. 1968); Lewis v. Seanor Coal Co., 382 F.2d 437, 441 (3d Cir. 1967), cert. denied, 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968). Cf. American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821, 828 (2d Cir. 1968); Western Geophysical Co.

v. Bolt Associates, Inc., 305 F.Supp. 1248 (D.Conn.1969).

3. Cf. Associated Milk Drivers, Inc. v. Milk Drivers Union, Local 753, etc., 422 F.2d 546, 552 (7th Cir. 1970); Associated Press v. Taft-Ingalls Corp., 340 F.2d 753, 769 (6th Cir. 1965), cert. denied, 382 U.S. 820, 86 S.Ct. 47, 15 L.Ed.2d 66 (1965).

employ discovery; the right to appeal) in order to obtain employment is a contract in restraint of trade among the several States, imposed by the weight of the NYSE's monopoly position in the industry, and is patently illegal."

But, while appellant cites Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that a customer's agreement to arbitrate and thus forego the resort to court action granted by legislation was void under section 14 of the Securities Act, 15 U.S.C. § 77n,[4] he does not offer a *Wilko* illegality claim. Nor could he, not being a security buyer. *See* Brown v. Gilligan, Will & Co., 287 F.Supp. 766, 771 (S.D.N.Y.1968).[5]

We are unable to see with any clarity how the requirement that employees of Stock Exchange firms agree to arbitrate any controversies could have an anticompetitive impact in the securities market. It is perhaps conceivable that potential employees, unwilling to subscribe to the Exchange's conditions, would refuse to seek employment with member firms. But this in no way would seem to diminish competition among the firms. The arbitration requirement in this case is to be contrasted with the "no-switching" agreement in Union Circulation Co. v. F.T.C., 241 F. 2d 652 (2d Cir. 1957), in which a magazine industry agreement which prevented a distributor from hiring any solicitor who had worked for another distributor during a specified prior period was recognized as discouraging labor mobility and therefore advantaging large and well established agencies to the prejudice of infant organizations. *Id.* at 658. Here we see no such differential impact. Although nothing before us indicates that arbitration favors employees less than management,[6] the requirement would seem at most only to affect the internal relations between management and employees. In short, while arbitration may be so linked with market-dominating devices as to be antithetical to the antitrust laws in some situations, *cf.* Paramount Famous Lasky Corp. v. United States, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145 (1930), we fail to see any such effect here.

Appellant's best antitrust argument would seem to be that the Stock Exchange rule unreasonably impairs the ability of its members to compete with one another in the labor market. This argument presupposes that if some members were not required to insist on arbitration of disputes with employees, they would not do so and that they would therefore have a competitive advantage over members who insisted on arbitration. It is possible that this argument could be verified if appellant were given the opportunity to marshal the facts, but we find the prospect of its prevailing remote. First, we doubt that the facts would reveal that the existence or absence of arbitration clauses would have any impact on competition between members for employees. Second, even if such an impact were shown, appellant would have to prove the rule was outside the self-regulatory grant of the Securities Act which is a partial exception to

4. This section invalidates any "stipulation * * * binding any person acquiring any security to waive compliance with any provision of this subchapter. * * *"

5. Indeed, 15 U.S.C. § 78bb(b), explicitly provides: "Nothing in this chapter shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between its members, or (2) with regard to the binding effect of such action on any person who has agreed to be bound thereby.

* * *" While clause (2) may refer to the agreement of a third person to be bound by a decision settling a dispute between members, it may arguably cover an agreement by a member's employee to be bound by an exchange decision settling his own dispute.

6. We note that the practice of the Exchange is to appoint five arbitrators, three having no connection with the securities business. Cowen v. New York Stock Exchange, 371 F.2d 661, 663 (2d Cir. 1967).

788

the antitrust laws. Silver v. New York Stock Exchange, *supra*. Such an alleged antitrust violation is far too uncertain for us to hold that the employment contract is clearly illegal. Nor can we say that enforcing the agreement would "make the courts a party to the carrying out of one of the very restraints forbidden by the Sherman Act." *Kelly, supra,* 358 U.S. at 520, 79 S.Ct. at 423.

Whatever might be the case were a rule suspect on its face or were a rule frontally attacked in a treble damage suit, we feel compelled by neither reason nor authority to order a district court to adjudicate the compatibility of the Exchange's arbitration requirement with the antitrust laws as part of a lawsuit to collect a commission.

Affirmed.