George DANCU

v.

COOPERS & LYBRAND.

Civ. A. No. 90–6890.

United States District Court, E.D. Pennsylvania.

Dec. 3, 1991.

Richard G. Phillips, Patrick C. Campbell, Jr., Law Offices of Richard G. Phillips Associates, Philadelphia, Pa., for George Dancu, plaintiff.

Lani Schweiker Shelton, Mary Minehan McKenzie, Dechert, Price & Rhoads, Philadelphia, Pa., for Coopers & Lybrand, defendant.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiff was hired by defendant Coopers & Lybrand ("C & L") on February 18, 1980 as a director of the State and Local Government Group of Management Consulting

Services in C & L's Philadelphia Office. He was offered admittance to the partnership of C & L and joined as a principal in October 1985 by executing a Partnership Agreement. The Partnership Agreement contained an arbitration provision for any claims or controversies arising out of the Agreement or the practices and affairs of the Firm.

In early 1989, Dancu was asked to withdraw from the partnership and ultimately did so effective January 1, 1990. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that his withdrawal was a result of age discrimination in violation of the Age Discrimination Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq.* The EEOC declined to review the merits of the case.[1] Plaintiff then filed this action alleging violations of the ADEA and a common law wrongful discharge claim. Presently before the court is Defendant's Motion to Compel Arbitration.

## DISCUSSION

### I. CONTRACTS OF EMPLOYMENT AND THE FAA

C & L seeks to compel arbitration of plaintiff's claims pursuant to the arbitration clause in the Partnership Agreement and the dictates of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*

The threshold question is whether the arbitration agreement is within the scope of the FAA. Section 1 expressly excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

An expansive reading of § 1 could encompass virtually all contracts of employment. In its recent term, the Supreme Court, while noting that some advocate this interpretation, expressly declined to provide a definitive interpretation. *See Gilmer v. Interstate/Johnson Lane Corporation,* —— U.S. ——, 111 S.Ct. 1647, 1651–52

1. The basis for this decision was that, as a partner, plaintiff was not entitled to ADEA protection. *See* EEOC Letter to Dancu (Defendant's Exhibit D) (citing *Wheeler v. Hurdman,* 825 F.2d 257 (10th Cir.1987), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987)).

n. 2, 114 L.Ed.2d 26 (1991). In the context of this case, the court must address the issue, although neither party has done so.

In *Tenney Engineering, Inc. v. United Elec. Radio & Machine Workers*, 207 F.2d 450 (3d Cir.1953), the Third Circuit found that § 1 did not exclude all contracts of employment from the scope of the FAA. The Court's interpretation was based on the principle of *ejusdem generis*. The Court found that in purposefully following the specific exemption created for seamen and railway workers with the words "any other class of workers engaged in foreign or interstate commerce," the drafters intended to indicate that only classes of workers actively involved in the transportation industry, such as seamen and railway workers, were to be exempt from the FAA. *Id.* at 452. If § 1 were intended to exempt all contracts of employment, the drafters easily and almost certainly would explicitly have so stated without qualification.[2]

Since *Tenney*, other courts have adopted a similar construction of the § 1 exemption. *See, e.g., Bacashihua v. United States Postal Service*, 859 F.2d 402, 405 (6th Cir. 1988) (the *class* of workers must engage in interstate commerce); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir.1972); *Dickstein v. du Pont*, 443 F.2d 783, 785 (1st Cir.1971) (§ 1 exemption limited to employees involved in actual movement of goods in interstate commerce and inapplicable to securities industry employee); *Management Recruiters Int'l v. Nebel*, 765 F.Supp. 419, 421–22 (N.D.Ohio 1991) (account executives not within ambit of § 1).

The court finds that the Partnership Agreement in this case is not excluded from the scope of the FAA. Plaintiff engaged in consulting services related to state and local government, and was not in any way part of a class of workers actively involved in interstate transportation. The court will respect the liberal federal policy favoring arbitration. *See Moses H. Cone*

*Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

## II. ADEA CLAIM AND THE FAA

■ Defendant relies on the holding in *Gilmer* that an ADEA claim is subject to compulsory arbitration under the FAA. Despite the decision in *Gilmer*, plaintiff argues that defendant has waived its right to arbitration because of an inordinate delay in filing the arbitration demand and the "extensive" discovery which has taken place.

■ A waiver of the right to compel arbitration will not be lightly inferred. *Gavlik Construction Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir.1975); *United States Use of Duo Metal & Iron Works, Inc. v. S.T.C. Construction Company*, 472 F.Supp. 1023, 1024 (E.D.Pa.1979). The inconsistency of a party's action does not control the issue, it is "the presence or absence of prejudice which is determinative...." *Gavlik*, 526 F.2d at 783 (citation omitted).

A waiver has been found only where the demand for arbitration came long after suit commenced or the parties had engaged in extensive discovery. *Id.* Until the Supreme Court decision in *Gilmer*, ADEA claims were not subject to compulsory arbitration in this Circuit. *See Nicholson v. CPC, International, Inc.*, 877 F.2d 221 (3d Cir.1989). Within six weeks of the *Gilmer* decision, defendant filed its motion to compel arbitration. This is not an inordinate delay. Indeed, the demand was filed less than eight months after the suit commenced.

The court does not find that extensive discovery has occurred or that plaintiff has been prejudiced by the discovery which has been conducted. The course of the proceedings to date appears to consist of defendant's answer to the complaint, the exchange of one set of interrogatories and

2. Another salient point noted by the Third Circuit is that the concept of the commerce power was far more limited at the time of the statute's enactment in 1925. *Compare Hammer v. Da-* *genhart*, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101 (1918) with *United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

requests for documents, and two depositions.[3]

Plaintiff's final argument is that the wrongful discharge claim was arbitrable ab initio and in not moving previously to compel arbitration of that claim, defendant waived its right to arbitration of any claim. In essence, plaintiff claims prejudice from defendant's failure to anticipate the change in the law of this Circuit wrought by the Supreme Court decision in *Gilmer*. Defendant understandably may have been reluctant simultaneously to litigate related claims in different forums. Plaintiff has not made a showing of prejudice if both claims are submitted to arbitration in the wake of *Gilmer*.

### III. CONCLUSION

Plaintiff has alleged two claims, both of which are subject to arbitration under the FAA. Retaining jurisdiction would serve no purpose as both claims will be determined in the arbitration. *See Hoffman v. Fidelity and Deposit Co.*, 734 F.Supp. 192 (D.N.J.1990). Without a live controversy before the court, the appropriate procedure is dismissal of the action without prejudice. *See Sea–Land Service, Inc. v. Sea–Land of Puerto Rico, Inc.*, 636 F.Supp. 750 (D.C.Puerto Rico 1986).

An appropriate order will be entered.

---

**3.** Courts have compelled arbitration on records far more extensive than in this case. *See, e.g.,* *American Dairy Queen Corp. v. Tantillo,* 536 F.Supp. 718, 721–22 ((M.D.La.1982).