

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2000

# Smith v. Equitable

Precedential or Non-Precedential:

Docket 99-1031

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Smith v. Equitable" (2000). *2000 Decisions*. Paper 71.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/71

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 4, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1031

C. LEON SMITH,
       Appellant

v.

THE EQUITABLE

       Appellee

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 98-cv-01264)

District Judge: Honorable J. Curtis Joyner

ARGUED NOVEMBER 1, 1999

BEFORE: NYGAARD, McKEE, and ROSENN,
Circuit Judges.

(Filed: April 4, 2000)

        Joseph T. Wright, Jr., Esq.
        Danielle M. Mulcahey, Esq. (Argued)
        Wright & Associates
        148 Adams Avenue
        Scranton, PA 18503
         Attorneys for Appellant


        Larry Besnoff, Esq.
        Obermayer, Rebmann, Maxwell
         & Hippel
        1617 John F. Kennedy Boulevard
        One Penn Center, 19th Floor
        Philadelphia, PA 19103

        William L. Kandel, Esq. (Argued)
        John D. Giansello, III, Esq.
        Orrick, Herrington & Sutcliffe
        666 Fifth Avenue
        New York, NY 10103-0001
         Attorneys for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

I.

This appeal arises from appellant C. Leon Smith's
attempt to secure employment with appellee, The Equitable.
He alleges that The Equitable refused to hire him because
of his race, in violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C. S 2000e et seq.; 42 U.S.C. S 1981; and the
Pennsylvania Human Rights Act, 43 P.S. 955, et seq. The
District Court found that the parties had entered into an
arbitration agreement that covered Smith's claims. It
granted The Equitable's motion to compel arbitration, and
dismissed Smith's claims without prejudice. The District
Court reasoned that arbitration was the only relief Smith
was allowed under the Federal Arbitration Act ("FAA"), 9
U.S.C. SS 3-4. Smith now appeals, arguing that the District
Court should not have applied or enforced the arbitration
agreement. Because we lack appellate jurisdiction to hear
an appeal of this type of interlocutory order, we will
dismiss.

II.

In late 1996, Smith applied for a position selling "Series
6" annuities for The Equitable, a registered broker-dealer of

securities. Joseph McDonough, a District Manager for The
Equitable, interviewed Smith and forwarded his resume to
an Agency Manager named Joel Albert. Allegedly,
McDonough wanted to hire Smith but Albert stated he did
not want Smith to work for The Equitable because he is
African-American. However, in mid-January of 1997
McDonough offered Smith a pre-employment contract to
sell securities as a "prospective agent" of The Equitable.

As a prospective agent, Smith could attempt to qualify for
regular employment with The Equitable by selling securities
for the company during a trial period. The Equitable
considered prospective agents to be independent
contractors, and allowed them to solicit offers for the sale
of securities products on its behalf in order to evaluate
them. To become a prospective agent, however, Smith was
first required to register with the National Association of
Securities Dealers ("NASD"). The NASD in turn required
him to sign and submit an application called a U-4
"Uniform Application for Securities Industry Registration or
Transfer." This application stated that Smith agreed "to

arbitrate any dispute, claim or controversy that may arise between [him] and [his] firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws" listed on the form.

The NASD Code of Arbitration Procedure, incorporated into the U-4 agreement, made the following matters eligible for arbitration:

> [A]ny dispute, claim or controversy arising out of or in connection with the business of any members of the [NASD], or arising out of or in connection with the employment or termination of employment of associated person(s) with any member . . .:
>
> (a) between or among members;
>
> (b) between or among members and associated persons;
>
> (c) between or among members or associated persons and public customers, or others.

NASD Manual -- Code of Arbitration Procedure Rule 10101 (1997).

3

Of the disputes that are eligible for arbitration, the NASD Code requires that several types always be submitted to arbitration. These categories include disputes involving "a person associated with a member against a member" and vice-versa. NASD Code, Rule 10201(a). A person associated with a member is defined as "a natural person registered under the Rules of the [NASD] . . . or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member." NASD By-Laws, Art. 1 (ee).

At the outset, the District Court correctly noted that the strong federal policy favoring arbitration required it to resolve all ambiguities in the U-4 agreement in favor of arbitration. See Smith v. The Equitable, 27 F. Supp. 2d 565, 568 (E.D. Pa. 1998) (citing Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 178 (3d Cir. 1998), cert. denied , 119 S. Ct. 1028, 143 L. Ed. 2d 38, and Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 1652, 114 L. Ed. 2d 26 (1991)). The District Court held that the scope of the U-4 agreement did cover Smith's claims, because they arose out of his pre-employment contract with The Equitable:

> Accordingly, we find that Plaintiff 's current claims

either arise out of or in connection with the business of a NASD member or arise out of the employment or termination of employment of an associated person with any member. Therefore, Plaintiff 's claims constitute the type of claims anticipated by the language of the U-4 Application and the NASD Code of Arbitration Procedure.

Smith v. The Equitable, 27 F. Supp. 2d at 568.

Smith argued that the U-4 agreement should not apply in his case. He claimed that The Equitable fraudulently induced him to sign the agreement, when it knew that it would not hire him. Smith claims The Equitable thus tricked him into waiving his rights under Title VII, and the arbitration agreement should not be enforced as a result. The District Court agreed that the arbitration agreement would not be binding if Smith could demonstrate that it was based on fraud, duress, mistake, "or some other

4

ground recognized by the law applicable to contracts generally." Id. (citing Seus, 146 F.3d at 184 (quotation marks omitted)). However, the District Court also correctly noted that the Federal Rules of Civil Procedure require allegations of fraud to be pleaded with particularity. See Smith v. The Equitable, 27 F. Supp. 2d at 569; Fed. R. Civ. P. 9(b). It concluded that Smith had failed to do so.

The District Court granted The Equitable's motion to compel arbitration. It also granted The Equitable's alternative motion to dismiss the litigation. The District Court reasoned that because all of Smith's claims were subject to arbitration, "retaining jurisdiction would serve no purpose." Smith v. The Equitable, 27 F. Supp. 2d at 569. It therefore dismissed Smith's claims without prejudice. Smith appeals on the grounds that the District Court misconstrued the applicability of the arbitration agreement, that he should have been allowed to plead his allegations of fraud with greater particularity, and that he did not make a knowing and voluntary waiver of his civil rights when he signed the arbitration agreement.

III.

Before we can consider Smith's arguments on the merits, we must address The Equitable's assertion that we lack appellate jurisdiction to hear this appeal. See Zosky v. Boyer, 856 F.2d 554, 555 (3d Cir. 1988), cert. denied, 488 U.S. 1042, 109 S. Ct. 868, 102 L. Ed. 2d 992 (1989) (examining appellate jurisdiction to review order compelling arbitration sua sponte). Our jurisdiction depends on

whether or not the District Court's order compelling
arbitration was a final (and thus appealable) order, or
whether it was an interlocutory (and thus non-appealable)
order.

Generally, a federal Court of Appeals may not hear an
appeal from a non-final decision of a District Court. See 28
U.S.C. S 1291.1 Subject to a limited exception,2 Section

_____

1. Very limited exceptions to the rule that interlocutory orders are not
immediately appealable may be found in 28 U.S.C.S 1292(a)(1) (for
interlocutory orders involving injunctions) and 28 U.S.C. S 1292(b) (for

5

16(b) of the F.A.A., 9 U.S.C. S 16(b), specifically prevents
appeal of a District Court's interlocutory order compelling
arbitration. This section provides that:

> [A]n appeal may not be taken from an interlocutory
> order granting a stay of any action under section 3 of
> this title; directing arbitration to proceed under section
> 4 of this title; compelling arbitration under section 2063
> of this title; or refusing to enjoin an arbitration that is
> subject to this title.

9 U.S.C. S 16(b)(1)-(4) (format altered). Section 16(b) of the
F.A.A. reflects "the strong federal policy favoring
arbitration." Seus, 146 F.3d at 179. Because the District
Court did compel arbitration under Section 4 of the F.A.A.,
Section 16(b) prohibits us from hearing Smith's appeal if
that order was interlocutory. Whether the order was
interlocutory or not depends on whether it arose from an
independent or an embedded proceeding.

Independent proceedings are those which have been
brought initially for the sole purpose of compelling
arbitration pursuant to Section 4 of the FAA, 9 U.S.C. S 4.
These proceedings arise independently of any other lawsuit,
and the District Court's resulting order is immediately
appealable as the final relief sought. As the United States
Court of Appeals for the Second Circuit has explained,

_____

certain certified questions). These grounds are generally not applicable
in

the arbitration context, because "no irreparable harm will be done to
either party by requiring arbitration without an interlocutory appeal."
Zosky, 856 F.2d at 561.

2. Section 16(b) does not trump 28 U.S.C. S 1292(b), which allows the

District Court to certify "controlling question of law as to which there is

substantial ground for difference of opinion" such that immediate appeal "may materially advance the ultimate termination of the litigation." This exception does not apply here.

3. Section 206 provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. S 206.

> [i]f the suit is "independent," i.e., the plaintiff seeks an order compelling or prohibiting arbitration or a declaration that a dispute is arbitrable or not
>
> arbitrable, and no party seeks any other relief, afinal judgment ending such litigation is appealable at once . . . . If arbitration has been ordered, the objecting party need not await the outcome of the arbitration before challenging the order to arbitrate.

Filanto, S.P.A. v. Chilewich Int'l Corp., 984 F.2d 58, 60 (2d Cir. 1993) (citations omitted and format altered); see also Zosky, 856 F.2d at 557–59 (citing Rogers v. Schering Corp., 262 F.2d 180, 182 (3d Cir. 1959) (in banc) (recognizing distinction between independent proceedings to compel arbitration and those arising as a defense to other claims)).

Embedded proceedings, on the other hand, are those in which an agreement to arbitrate forms a defense to a claim or claims brought before the court. Orders compelling arbitration in an embedded proceeding are interlocutory, and thus cannot be appealed according to Section 16(b) of the F.A.A. and the final decision rule contained in 28 U.S.C. S 1291. As we have observed, "[i]t may appear anomalous for the appealability of what amounts to the same order to depend on the procedural posture of the case in the district court." Zosky, 856 F.2d at 560. However,

> the underlying rationale . . . is that an order directing arbitration is interlocutory and, therefore, not appealable if it is made in a lawsuit, such as a suit for damages, in which in the normal course of judicial procedure there will be a later final order or judgment from which an appeal can be taken by a person aggrieved by the prior order to arbitrate.

Id., 856 F.2d at 558 (quoting Rogers, 262 F.2d at 182).

The question is which type of proceeding we have in this case. Smith filed a lawsuit against The Equitable seeking relief under various statutes. The Equitable responded by seeking to compel arbitration as a defense to the lawsuit. It is clear, therefore, that the motion to compel arbitration began as an embedded proceeding because "[a]rbitration is not the full relief sought by the plaintiff; indeed, the plaintiff opposes arbitration." Zosky, 856 F.2d at 559. The

7

wrinkle here is that the District Court both compelled arbitration and dismissed Smith's complaints.

Generally, when a District Court grants an order compelling arbitration in an embedded proceeding, it will also stay the proceedings pursuant to Section 3 of the F.A.A., 9 U.S.C. S 3. Indeed, The Equitable argues that the District Court only has power to stay the claims, according to the mandatory language of Section 3. Although this may be the better practice, it was not error to dismiss. We have held in the context of an embedded proceeding that for reasons of judicial efficiency, when "all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it." Seus, 146 F.3d at 179 (citing Dancu v. Coopers & Lybrand, 778 F. Supp. 832, 835 (E.D. Pa. 1991), aff 'd, 972 F.2d 1330 (3d Cir. 1992)).

An argument can thus be made that we should treat the present case more like an independent proceeding to compel arbitration than as an embedded one, because in the present case the District Court did not stay Smith's claims. The end result, one could argue, is thus more like that of an independent proceeding. We do not find this distinction very compelling. Smith's claims were dismissed without prejudice so that the arbitration could proceed in an efficient manner. He argues the arbitration agreement was invalid because he was never employed by The Equitable, that The Equitable never intended to employ him, and that his signature to the agreement was obtained by artifice. However, he can test the validity of the arbitration agreement before the arbitrator and still retain his rights, if he deems it necessary, to challenge the arbitration decision by re-filing his statement in the District Court. Because Smith may re-file in this event,"[t]he district court's order dismissing the action to the extent that it concluded the . . . matter was arbitrable is functionally analogous to the grant of a stay in an ongoing proceeding pending the outcome of arbitration." Communication Workers v. American Tel. & Tel., 932 F.2d 199, 207 (3d Cir. 1991).

We thus hold that because the dismissal was the

functional equivalent of a stay in this context, this is still an embedded proceeding. The important point is that the

8

District Court did compel arbitration. Where, as here, arbitration is a defense to litigation, arbitration provides "an expeditious and inexpensive mode of alternative dispute resolution." Communication Workers, 932 F.2d at 207. It would be contrary to Section 16(b) of the F.A.A. to allow an appeal of this order. Section 16(b) makes "clear that with respect to an interlocutory order issued in an ongoing proceeding, any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not." Id. We are satisfied that we lack appellate jurisdiction to hear this matter.

In an effort to circumvent this logic, Smith points out the similarities between the complaint in Seus and his own. In Seus, a former employee of a brokerage firm alleged that the firm violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. SS 2000e et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. SS 621 et seq. The defendant raised as a defense the Form U-4 arbitration agreement that plaintiff had signed. The District Court compelled arbitration and dismissed the complaint, and this Court affirmed. Smith argues that because we reached the merits of an appeal of an order compelling arbitration in an embedded proceeding in Seus, this at least implicitly demonstrates that we have jurisdiction to reach the merits of his appeal as well. We disagree. In Zosky, we held that an order compelling arbitration arising from an embedded proceeding is not immediately appealable. See Zosky, 856 F.2d at 554. In Seus, we did not address jurisdiction.4

We will dismiss for lack of appellate jurisdiction.

_____

4. Because a later panel cannot overrule the holding of an earlier panel, Seus could not alter our holding in Zosky, implicitly or otherwise, unless it found the cases distinguishable. See Internal Operating Procedures S 9.1 (3d Cir. 1994) ("no subsequent panel overrules the holding in a published opinion of a previous panel. Court in banc consideration is required to do so.").

9

A True Copy:
Teste:

        Clerk of the United States Court of Appeals

for the Third Circuit

10