Elaine L. WILLIAMS, Plaintiff,

v.

KATTEN, MUCHIN & ZAVIS and
Vincent Sergi, Defendants.

No. 92 C 5654.

United States District Court,
N.D. Illinois, E.D.

Nov. 15, 1993.

Jean M. Templeton, James D. Montgomery & Associates, Ltd., Chicago, IL, for plaintiff.

Michael A. Warner, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

## ORDER

MAROVICH, District Judge.

Before us are the objections to Magistrate Pallmeyer's Report and Recommendation filed by the Plaintiff in this Title VII case. In her Report and Recommendation, Judge Pallmeyer ordered the parties to bring this

1. In her three-count complaint, Plaintiff alleges

dispute before the arbitrator and the Plaintiff objects.

This Court will modify or set aside the Magistrate Judge's orders only if it finds that those orders were "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *Bobkowski v. Bd. of Educ.*, 141 F.R.D. 88, 90 (N.D.Ill.1992). We are aware that the Federal Arbitration Act establishes a federal policy favoring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1982), *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310 (7th Cir.1981). After reviewing the Report and Recommendation issued by the Magistrate Judge in this case, we do not find that her order was in error or contrary to the law. Our review of the arbitration law involved here supports Judge Pallmeyer's conclusion and we therefore adopt her Report and Recommendation. We deny Plaintiff's objections.

To conclude, we dismiss this action without prejudice and we stay the tolling of the statute of limitations pending arbitration. We further deny the earlier motion to dismiss as moot.

## REPORT AND RECOMMENDATION

PALLMEYER, United States Magistrate Judge.

Plaintiff Elaine L. Williams is a non-capital African–American female partner in the law firm of Katten, Muchin & Zavis ("KMZ"), who has charged Defendants, KMZ and Vincent Sergi, a capital partner of the firm, with discriminating against her on the basis of her race, sex and religion. Defendants KMZ and Sergi have moved for an order staying this action and compelling arbitration pursuant to provisions of the KMZ Partnership Agreement ("Agreement").

Count I of Plaintiff's complaint alleges that Defendants engaged in or encouraged a continuous course of discrimination and harassment against her based on her race, sex and religion in violation her civil rights under Title VII, 42 U.S.C. § 2000e *et seq.*[1] Count

that Defendants engaged in discrimination and

II alleges that Defendants engaged in or encouraged such discrimination and harassment with malice and/or reckless indifference to Plaintiff's right to "make and enforce contracts" under 42 U.S.C § 1981. Count III alleges that Defendants discriminated against Plaintiff wilfully, maliciously and intentionally, inflicting physical, mental and emotional injury on Plaintiff. Plaintiff seeks an order requiring Defendants to reinstate her paid medical leave and an injunction against further acts of discrimination and harassment, and compensatory and punitive damages for pecuniary, business opportunity, and emotional losses. In Count III, Plaintiff additionally seeks compensation for her medical bills.

On September 25, 1992, Defendants filed their Answer, asserting as a Tenth Affirmative Defense, the allegation that KMZ's Partnership Agreement ("Agreement"), to which Plaintiff was a party, requires arbitration of her claims. Subsequently, on February 23, 1993, Defendants filed a Motion to Stay Proceedings and to Compel Arbitration (hereinafter, "Motion to Compel"). The motion is now fully briefed. For reasons discussed below, Defendants' motion should be granted.

## DISCUSSION

Article 20 of the KMZ Partnership Agreement provides that "[a]ny controversy or claim arising out of or relating to any provision of this Agreement or any other document or agreement referred to herein ... shall be resolved by arbitration ..." [2] Defendants argue in this motion that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), requires the enforcement of the parties' agreement to arbitrate. Defendants note that the Partnership Agreement expressly refers to such claims as those asserted here. Specifically, KMZ's Equal Employment Opportunity Policy (Firm Reference Manual, Ex. B ¶ 2.6 to Defendants' Memorandum), which parallels the language of Title VII precisely, and guarantees the same rights protected by § 1983, is incorporated into Article 8.4 of the Agreement. (Partnership Agreement, Art. 8.4, Ex. A to Defendants' Memorandum.) [3] Thus, Defendants

harassment beginning no later than March 1990 and continuing to the present. She claims that Defendants engaged in or encouraged antagonistic comments comparing the rights of African-Americans and Jewish Americans; making sexually explicit and derogatory comments and "jokes"; ransacking her office, refusing to respond to her repeated complaints of harassment and discrimination; excluding her from access to clients; awarding significantly higher bonuses to white male employees who became non-capital partners at the same time as Plaintiff, but who had lower billable hours than Plaintiff; terminating her paid medical leave and putting her on unpaid personal leave in retaliation for her filing a complaint against Defendants with the EEOC; and similar acts. (Complaint ¶¶ 14–31.)

**2.** The full text of Article 20 of the KMZ Partnership Agreement reads as follows:
*Arbitration*
Any controversy or claim arising out of or relating to any provision of this Agreement or any other document or agreement referred to herein (including, but not limited to the Retirement Plan and the Disability Plan) shall be resolved by arbitration by such alternative dispute resolution service as is agreed to by the parties to such controversy or claim or, failing such agreement within sixty (60) days after such dispute arises, by arbitrators selected as described below in accordance with the rules and procedures established by the American Arbitration Association (but in no event shall

the arbitrators incur any obligations for fees or other costs to be paid to such Association without the consent of the Firm). Only a person who is a practicing lawyer admitted to the State Bar of Illinois who practices in a law firm containing 50 or more attorneys may serve as an arbitrator. Each side to the claim or controversy may select one arbitrator and those arbitrators shall choose a third arbitrator; these arbitrators so selected shall constitute the panel. The American Arbitration Association rules for labor arbitration shall control any discovery conducted in connection with the arbitration.... [A]ny party to any award rendered in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered thereon by any court having jurisdiction. The arbitration shall be conducted in Cook County, Illinois.

**3.** Article 8.4 of the KMZ Partnership Agreement reads in part as follows:
8.4 Each Partner acknowledges that he or she is familiar with and has been provided with copies of the policies and procedures of the Firm, including ... policies set forth in the Firm's Office Reference Manual. Each Partner and Principal agrees to comply with such policies and procedures, as they may be amended from time to time.
Article 2.6 of the Firm Reference Manual provides that:
The Firm is an Equal Opportunity Employer. In this regard, employees (including Attorneys

argue that Plaintiff has expressly consented to arbitrate her discrimination claims. Similarly, Plaintiff's allegations that Vincent Sergi discriminated against her and inflicted emotional distress may be construed as contractual claims because they too are expressly incorporated into the Agreement. (Defendants' Memorandum, at 4–5.) Article 11.6.2 of the Agreement requires managing partners in the Firm to establish committees as deemed necessary to oversee and be responsible for the Firm's affairs.

Defendants also argue that even considering Plaintiff's claims as statutory rather than contractual ones, the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), allows the arbitration of such claims. (Defendants' Memorandum, at 6.) Although employment discrimination claims were traditionally not considered appropriate subjects of arbitration, the Court in *Gilmer* signalled that exceptions to that traditional understanding should be made in circumstances such as those presented here.

Plaintiff objects to Defendants' motion on several grounds. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration (hereinafter "Plaintiff's Opposition").) She argues that her Title VII and Civil Rights Act claims are inappropriate subjects of arbitration. (*Id.* at 9–11.) Second, Plaintiff contends that the terms of the Federal Arbitration Act exclude this dispute from its reach. (*Id.* at 2–5.) Plaintiff asserts that the arbitration procedures established in the Partnership Agreement are not adequate to protect her interests. (*Id.* at 5–7.) She argues that the arbitration clause of the Partnership Agreement should not be enforced against her because the Partnership Agreement was not the product of arms' length negotiation, and because that clause is inconsistent with other provisions of the Partnership Agreement. (*Id.* at 8–9.) Finally, in a supplemental memorandum filed at this court's direction, Plain-

tiff has argued that Defendants waived their rights under the arbitration clause by availing themselves of the benefits of court-ordered discovery of records of Plaintiff's treating psychiatrist. (*See* Plaintiff's Memorandum of Law Opposing Defendants' Motion to Compel Arbitration on the Ground of Waiver (hereinafter "Plaintiff's Waiver Memorandum").) These arguments are addressed below.

## I. *Arbitration of Title VII and Section 1981 Claims*

The Federal Arbitration Act, enacted in 1925, provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has repeatedly recognized that the FAA embodies a broad federal policy favoring arbitration. *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2336–37, 96 L.Ed.2d 185 (1987). Section 3 of the Act requires a court to stay proceedings if an issue before it is arbitrable under an agreement covered by the FAA, while section 4 directs the court to issue an order compelling arbitration if either party fails, neglects or refuses to comply with the arbitration agreement. *Id.* §§ 3, 4. The FAA furthermore "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

In light of this strong policy favoring enforcement of arbitration agreements, "[t]he

and Staff members) will be recruited, hired, assigned, advanced, compensated, and retained solely upon their qualifications and performance of assigned responsibilities without regard to race, sex, religion, national origin, creed, color, age, ancestry, unfavorable discharge from mili-

tary service, marital status, parental status, sexual orientation or handicap unrelated to ability to perform on the job. As a further demonstration of the commitment to equal opportunity employment, the Firm adopted an Affirmative Action Plan in 1988.

burden is on the party opposing arbitration ... to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 227, 107 S.Ct. at 2337; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (party opposing the motion to compel arbitration has the "burden of showing that Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act." *Id.* 500 U.S. at ——, 111 S.Ct. at 1657).

In *Gilmer*, the Court enforced a private agreement requiring arbitration of an employee's age discrimination claim under the ADEA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Gilmer, a financial manager, had registered with several stock exchanges, including the New York Stock Exchange (NYSE), as required by the terms of his employment with Interstate/Johnson Lane Corp. ("Interstate"). *Id.* 500 U.S. at ——, 111 S.Ct. at 1650. The NYSE registration agreement provided that he would arbitrate any disputes—in particular, any controversy arising out of his employment or termination—between himself and his employer. *Id.* When Interstate discharged him at the age of 62, Gilmer instituted a suit against Interstate in federal district court charging age discrimination. The Court held the arbitration agreement enforceable because Gilmer had failed to meet his "burden of showing that Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act." 500 U.S. at ——, 111 S.Ct. at 1657.

Before *Gilmer*, statutory rights enforced under FAA-mandated arbitration had been predominantly commercial in nature. *Gilmer*, 500 U.S. at ——, 111 S.Ct. at 1652 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Act claims, 15 U.S.C. 1 *et seq.*); *Shear-son/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (claims under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2)).

In a series of statutory civil rights cases preceding *Gilmer*, the Court refused to preclude access to the federal courts after arbitration had taken place pursuant to provisions of collective bargaining agreements. In the leading case, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court permitted an employee who had exhausted grievance procedures available under a collective bargaining agreement to bring a Title VII claim into federal court without requiring deference to the arbitral decision against him. Similarly, the Court in *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), stressing that grievance procedures under collective bargaining agreements protect only contractual rights, refused to conclude that arbitration could bar plaintiffs from bringing to federal court their claim that their employer violated the minimum wage provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Three years later in *McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) the Court harkened back to its rejection of "a rule of preclusion in *Barrentine*" and of "a rule of deferral in *Gardner–Denver*," concluding that no res judicata or collateral estoppel effect arising from an arbitral award pursuant to a collective bargaining agreement would bar a subsequent § 1983 action claiming First Amendment violations. *Id.* at 289, 104 S.Ct. at 1802. *See also Kulavic v. Chicago & Illinois Midland Railway Co.*, 1 F.3d 507 (7th Cir. 1993).[4]

---

4. In *Kulavic*, a railroad employee who was injured on the job challenged his subsequent termination pursuant to procedures dictated by the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188 (1988), including an appeal to the Public Law Board ("PLB"). After the PLB upheld the conclusion of an internal investigative hearing which supported his discharge, plaintiff brought suit to recover for his injuries, including lost pay, under the Federal Employers' Liability Act ("FELA").

The *Gardner–Denver* line of ·cases expressed doubt about the propriety of allowing arbitration pursuant to a collective bargaining agreement to stand as the final resolution of a statutory civil rights claim; in *Gilmer,* however, the Court made it clear that private agreements to enforce such claims are enforceable in the absence of clear congressional intent to the contrary. The Court distinguished the *Gardner–Denver* line of cases on several bases. 500 U.S. at ——, 111 S.Ct. at 1657. First, noted the Court, the *Gardner–Denver* line of cases involved arbitration of contract-related disputes; they did "not involve the issue of the enforceability of an agreement to. arbitrate statutory claims." *Id.* 500 U.S. at ——, 111 S.Ct. at 1657. Rather, they concerned the preclusive effect that the arbitration of contractual claims has on the subsequent adjudication of statutory claims arising from the same set of facts. *Id.* Because the plaintiff employees in *Gardner–Denver* and its progeny had not brought their statutory claims to the arbitration table, and because the labor arbitrators were not authorized to deal with such claims, arbitration did not preclude the plaintiffs from filing subsequent statutory actions in federal court. *Id. Gilmer* and the case before this court, on the other hand, involve pre-arbitration attempts to litigate statutory claims that were not expressly excluded from the scope of the arbitration clauses.

As a second distinguishing characteristic, the Court noted that unlike the situation in *Gilmer,* the arbitration agreements in the *Gardner–Denver* line of cases were part of collective bargaining agreements. An important concern in those cases, notably absent in *Gilmer* and in the case before· this court, therefore, is "the tension between collective representation and ·individual statutory rights," that is, the risk that representatives of the bargaining unit to which a party belongs will compromise that party's statutory rights for the benefit of the unit. *Id.* Finally, the *Gilmer* Court observed that *Gardner–Denver* and its progeny "were not decided under the FAA, which,. as discussed above, reflects a 'liberal policy favoring arbitration agreements.'" *Id.* (citing *Mitsubishi,* 473 U.S. at 625, 105 S.Ct. at 3353).

The *Gilmer* Court specifically distanced itself from the mistrust of arbitration expressed in *Gardner–Denver.* This mistrust, the Court observed, has since been "undermined by ... recent arbitration decisions," notably, *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 231–32, 107 S.Ct. 2332, 2340–41, 96 L.Ed.2d 185 (1987) and *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626–27, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985).[5] *Gilmer,* 500 U.S. at —— n. 5, 111 S.Ct. at 1656 n. 5. At the same time that judicial confidence in arbitration has grown, one com-

45 U.S.C. §§ 51–60 (1988). The District Court found in plaintiff's favor on the injury claims but refused to award damages on the grounds that Plaintiff's entitlement to back pay had been resolved adversely to him in the RLA proceedings. The Seventh Circuit reversed and remanded on the basis of the Supreme Court's rationale in the *Gardner–Denver* line of cases, stating,

> While the informality of an investigative hearing and circumscribed PLB review were intended to provide an expeditious alternative to lengthy court litigation for day-to-day minor labor disputes, these same procedures do not provide sufficient guarantees for reliable factfinding under the FELA.... [T]his same rationale formed part of the basis for the Supreme Court's decisions in *Gardner–Denver, Barrentine,* and *McDonald* which determined that arbitration prior to Title VII, FLSA, or sec. 1983 actions could not preclude the statutory actions.... In *Gardner–Denver,* the Supreme Court acknowledged that "it is the informality of arbitral procedure that enables it to function

> as an efficient, inexpensive, and expeditious means for dispute resolution. This same characteristic, however, makes arbitration a less appropriate forum for final resolution of Title VII issues than the federal courts." 415 U.S. at 58, 94 S.Ct. at 1024.

*Kulavic,* 1 F.3d at 515–16 (footnote omitted).

5. Noting the "healthy regard for the federal policy favoring arbitration" expressed in *Moses Cone Memorial Hospital,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983), the Court in *Mitsubishi Motors* concluded that "we are all past the time when judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals inhibited the development of arbitration as a means of alternative dispute resolution." *Mitsubishi Motors,* 473 U.S. at 626–27, 105 S.Ct. at 3353–54. In *Mitsubishi Motors,* the Court approved the arbitration of Sherman Act claims asserted as counterclaims in a lawsuit brought on a license agreement containing an arbitration clause. 460 U.S. at 628–40, 103 S.Ct. at 1396–1402.

mentator points out, the American Arbitration Association has expanded its procedural protections enhancing its adequacy to address civil rights complaints. *See* Stephen A. Plass, *Arbitrating, Waiving and Deferring Title VII Claims,* 58 B.U.L.REV. 779, 788 (1992) (citing Robert Coulson, *Fair Treatment: Voluntary Arbitration of Employee Claims,* 33 Arb.J. No. 3, 23 (1978)).

Neither the Supreme Court nor the Seventh Circuit has expressly decided whether Title VII and § 1981 claims are subject to compulsory arbitration under the FAA. Several other courts, however, have recently considered arguments similar to those raised here and in *Gilmer.* In *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir. 1992), the court rejected plaintiff's objection to arbitration of her Title VII sex discrimination claims pursuant to a private arbitration agreement. Having concluded that none of the concerns of the Court in *Gardner–Denver* were present, the *Bender* court found no reason to distinguish Title VII claims from ADEA claims. *Id.* at 700. The court observed that "[a]lthough *Gilmer* involved a claim under the ... ADEA ..., its reasoning is dispositive of the agreement to arbitrate Title VII claims before us." *Id.* at 700. Similarly, the court in *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir. 1991), an arbitration dispute remanded by the Supreme Court for further consideration in light of *Gilmer,* had "little trouble concluding that Title VII claims can be subjected to compulsory arbitration" since "both the ADEA and Title VII claims are similar civil rights statutes, and both are enforced by the EEOC ..." *Id.* at 229–30. In *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932 (9th Cir.1991), the court, similarly faced with a motion to compel arbitration of a Title VII

claim pursuant to a private agreement to arbitrate, interpreted *Gilmer* as "reject[ing] the argument that the [*Gardner–Denver*] line of cases illustrates Congress's intent to preclude arbitration in a commercial contract setting." *Mago,* 956 F.2d at 935; *see also Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 309 (6th Cir.1991) (nothing in Title VII precludes the enforcement of an arbitration provision if the FAA applies); *Hull v. NCR Corp.,* 826 F.Supp. 303, 306 (E.D.Mo. 1993) ("Title VII claims, like ADEA claims, are subject to arbitration under the FAA.")[6]

Since *Gardner–Denver,* Congress has amended Title VII in significant ways in the Civil Rights Act of 1991. That legislation expressly approves and encourages arbitration as a method of enforcing rights under Title VII. Section 118 of the Act states that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." Pub.L. No. 102–166, 105 Stat. 1071 (1991). Therefore, Congress' strong policy favoring arbitration is reinforced, rather than overridden, with respect to Title VII claims.

Plaintiff argues, however, that, unlike Title VII and ADEA claims, race claims under 42 U.S.C. § 1981 are constitutional as well as federal statutory actions, and that arbitration of such claims would be inappropriate. (Plaintiff's Opposition, at 9–11.) Plaintiff cites *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), in support of her argument. *Runyon* does not establish that § 1981 creates constitutional rights, however; the Court there simply acknowledged that Congress was given the authority to enact § 1981 pursuant to the Thirteenth Amendment of the U.S. Constitution.[7] While

6. The court in *Hull* relied in part on *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978), where the Court held that jury trials are allowed under the ADEA despite the lack of an express provision for them in the Act. *Hull,* 826 F.Supp. at 306. Although the Court noted that Title VII and the ADEA are significantly different in their remedial and procedural provisions, the Court did acknowledge important similarities between the aims and substantive provisions of the two pieces of legislation. 434 U.S. at 584, 98 S.Ct. at 872.

7. The Court in *Runyon,* faced with charges that a private school's refusal to admit two African–American children because of a racially discriminatory admissions policy violated § 1981, held that § 1981 "constitutes an exercise of federal legislative power under § 2 of the Thirteenth Amendment ..." 427 U.S. at 178–79, 96 S.Ct. at 2598.

§ 1981 is rooted in the Thirteenth Amendment, it is no more or less constitutional in nature than Title VII, which was enacted pursuant to the Commerce Clause, U.S. Const., Art. 1, § 1, cl. 3; *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 245–46, 85 S.Ct. 348, 351–52, 13 L.Ed.2d 258 (1964); *see also Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 311 (6th Cir.1991) ("Title VII and the ADEA were both enacted under Congress' power to regulate commerce under the commerce clause ..."). In a post-*Gilmer* case addressing the arbitrability of both Title VII and § 1981 claims, the court concluded that arbitration of both may be compelled. *Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 89 Civ. 3749 (MJL), 1992 WL 245506 (S.D.N.Y. Sept. 14, 1992). The court there correctly rejected plaintiff's argument that race discrimination is a more serious offense "morally distinguishable" from gender and age claims. *Id.* at \*6. The argument that race discrimination is a special breed of offense not amenable to arbitration, the court reasoned, "lacks both judicial and legislative support," particularly in light of the pro-arbitration stance of section 118 of the Civil Rights Act of 1991. *Id.*

As in *Gilmer*, Plaintiff has failed to meet her burden of proving that in enacting the civil rights statutes she invokes here, Congress intended to preclude arbitration as a means of addressing claims thereunder. Therefore, unless section 2 of the FAA does not apply to the facts in the present case, or unless the exclusionary clause under § 1 does apply, the arbitration clause found in article 20 of the Agreement should be enforced.

## II. *The Scope of Section 2 of the FAA: "involving commerce"*

Having concluded that Title VII and § 1981 claims may be subject to arbitration, this court may consider the parties' specific arguments concerning the application of the FAA to the facts in this case. Plaintiff first asserts that the KMZ Partnership Agreement is not "a contract evidencing a transaction involving commerce," 9 U.S.C. § 2, and is not, therefore, covered by the FAA.

(Plaintiff's Opposition, at 2). This issue can be disposed of directly since, as Defendants correctly point out, Plaintiff herself has alleged in her complaint that "KMZ is an employer within the scope of Title VII ... engaged in industries affecting commerce...." (Complaint ¶ 7.) As KMZ partner Michael R. Marget observed in an affidavit, KMZ does maintain offices in Illinois, New York, Florida, California, Wisconsin and the District of Columbia. (Affidavit of Michael R. Marget, Appendix to Defendants' Reply Brief in Support of their Motion to Stay Proceedings and to compel Arbitration ("Defendants' Reply") ¶ 2.)

Even apart from this admission by Plaintiff, under the Seventh Circuit's analysis in *Snyder v. Smith*, 736 F.2d 409 (7th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984), the KMZ Agreement necessarily involves commerce. The *Snyder* court relied on the Supreme Court's strong policy favoring arbitration of contract disputes and on its construction of "involving commerce" in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). 736 F.2d at 417–18. *Keating* involved a motion to compel arbitration of state law claims pursuant to a private agreement to arbitrate where a state statute deemed such agreements void. Addressing the suggestion that the FAA is merely a procedural statute applicable only in federal courts, Justice Berger, writing for the Court, observed that the "involving commerce" requirement in § 2 of the FAA is not "an inexplicable limitation on the power of the federal court, but ... a necessary qualification on a statute intended to apply in state and federal courts." 465 U.S. at 14–15, 104 S.Ct. at 860. The court in *Snyder*, in turn, concluded that *Keating* establishes the constitutional dimensions of the "involving commerce" language of section 2; "the Court [in *Keating*] equated the breadth of 'involving commerce' with the extent of Congress's power to regulate under the commerce clause." 736 F.2d at 418. On this basis, the *Snyder* court held that the FAA required arbitration of a dispute pursuant to the terms of partnership agreement for a partnership which managed Texas real estate from an Illinois office; in the Seventh Circuit's view, the partnership's

activities fell "well within the constitutional limits" of the commerce clause. *Snyder*, 736 F.2d at 418. *Accord Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985).

In the present case, Plaintiff attempts to distinguish *Snyder* on the grounds that no employment contract such as the KMZ Partnership Agreement was involved in that case. (Plaintiff's Sur–Reply to Defendants' Reply Regarding the Motion to Compel Arbitration, at 2.) Plaintiff's argument, however, is misconceived; nowhere in Section 2 is there language excluding employment agreements from the reach of that provision of the FAA.[8]

Considering Plaintiff's admission that KMZ is a business within the scope of Title VII, and the court's broad interpretation "involving commerce" in *Snyder*, the KMZ Partnership Agreement clearly gives evidence of a transaction involving commerce.

### III. *Exemption from Arbitration under Section 1 of the FAA*

Plaintiff next argues that even if the Agreement is one "involving commerce" under section 2, she is saved from compulsory arbitration by the FAA's exclusionary clause. Section 1 specifically exempts from the reach of the FAA "contracts of employment of seamen, railroad employees, or any other class of worker engaged in foreign or interstate commerce." 9 U.S.C. § 1. Recently, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, —— n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991), the Supreme Court declined to address the scope of this exclusion; the Court characterized the registration agreement with the New York Stock Exchange at issue in that case as other than an employment contract.

■ Defendants here similarly argue that the function of the Agreement was not to establish an employment relationship but, rather, a business entity, KMZ; thus, the Agreement is not subject to the exclusionary clause in § 1. (Defendants' Reply, at 5.) The argument is not persuasive; while the Agreement clearly establishes the contours of the partnership, it also defines the parameters of Plaintiff's employment as a non-capital partner at the firm.

The determination that the Agreement is an employment contract does not, however, require a conclusion that Plaintiff may rely on the exclusionary clause. The Seventh Circuit has limited the application of that clause to contracts of employment for workers *actively* employed in the *transportation* industries. *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985) (citations omitted); *Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150*, 351 F.2d 576, 580 (7th Cir.1965). The court in *Pietro Scalzitti* agreed that the exclusionary clause is limited "to workers engaged in the *movement* of foreign or interstate commerce ... not ... to collective bargaining agreements." 739 F.2d at 1162 (emphasis added). In dicta,[9] the *Miller Brewing* court reaffirmed this view. 739 F.2d at 1165. *See also Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir.1972); *Dickstein v. Du Pont*, 443 F.2d 783, 785 (1st Cir.1971) (exclusionary clause limited to workers "involved in, or closely related to, the actual movement of goods in interstate commerce"); *Tenney Engineering, Inc. v. United Elec., Radio & Machine Workers of America*, 207 F.2d 450, 452–53 (3rd Cir.1953); *Scott v. Farm Family Life Insurance Co.*, 827 F.Supp. 76 (D.Mass. 1993) (legislative history of the FAA sup-

---

8. The full text of Section 2 reads as follows:
 **§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate**
 A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.

9. The court ultimately based its decision on section 301 of the Taft–Hartley Act. 739 F.2d at 1162.

ports the conclusion that the exclusionary clause applies only to employees engaged in the transportation industry); *Hull v. NCR Corp.* 826 F.Supp. 303, 307 (E.D.Mo.1993) ("the FAA is applicable to non-union employment contracts involving workers who are not involved in the transportation industry"; *Corion Corp. v. Chen,* No. 91-11792-Y, 1991 WL 280288, *3-4 1991 U.S.Dist. LEXIS 18395, at *11-12 (D.Mass. Dec. 27, 1991) (summarizing circuit court views on the scope the exclusionary clause); *but see, e.g., United Elec., Radio & Mach. Workers v. Miller Metal Prod., Inc.,* 215 F.2d 221, 224 (4th Cir. 1954) (all employment contracts are exempted from FAA coverage). In the present case, Plaintiff's Agreement with KMZ did not involve active engagement in interstate commerce in the transportation industry; it merely established her rights and responsibilities as a partner. The arbitration clause contained in the Agreement cannot, therefore, be denied enforcement on the basis of the exclusionary clause.

## IV. *Adequacy of Arbitration Procedures*

■ Plaintiff next contends that even if arbitration can be compelled, it should not be in this case because the Agreement does not set forth adequate arbitration procedures. (Plaintiff's Opposition, at 5-7.) Specifically, Plaintiff first contends that Article 20 of the Agreement does not set forth specific enough procedures governing the conduct of the arbitration process regarding discovery, and second, that the American Arbitration Association ("AAA") rules for labor arbitration referred to in that article make no adequate

provision for the disqualification of biased arbitrators. *(Id.)*

Plaintiff argues that AAA rules, incorporated into the Agreement, are inadequate because they do not contain any provision for permitting or denying discovery, and that she will, therefore, be unable to benefit from the liberal discovery available under the Federal Rules. AAA rules do, however, authorize an arbitrator to subpoena witnesses and documents either independently or upon request of a party. (Plaintiff's Opposition, Ex. A at 12.)[10] Plaintiff's ability to obtain discovery under arbitration, therefore, need not rest solely on the willingness of the Defendants to allow discovery. (Plaintiff's Opposition, at 6).[11] In any case, Defendants have repeatedly expressed their willingness to pursue discovery voluntarily even if this court should order arbitration. There is no evidence that those repeated expressions were not made in good faith.

As to the second contention, the Arbitration clause of the Agreement, Article 20,[12] provides that should the parties fail to agree on an "alternative dispute resolution service" within sixty days after a dispute arises, arbitrators will be selected according to AAA rules and procedures. Article 20 of the Agreement allows each party to the dispute to select an arbitrator, and the two arbitrators selected shall in turn choose a third arbitrator. Labor Rule 17 of the AAA explicitly provides for disclosure and disqualification of an arbitrator who is in any way biased or has any financial or personal interest in the outcome of arbitration.[13] Plain-

---

**10.** Rule 28 of the AAA Labor Arbitration Rules states in part,

 28. Evidence
 ... Any arbitrator authorized by law to subpoena witnesses and documents may do so independently or upon the request of any party. The arbitrator shall be the judge of the relevance and materiality of the evidence offered and conformity to legal rules of evidence shall not be necessary ...

**11.** Furthermore, as the Court in *Gilmer* noted, parties to arbitration trade the "procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration." 500 U.S. at ——, 111 S.Ct. at 1655 (*quoting Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354-55).

**12.** *See supra* note 2.

**13.** Rule 17 of the AAA Labor Arbitration Rules, as amended January 1, 1992, Labor Arbitration Rule 17 states,

 17. Disclosure and Challenge Procedure
 No person shall serve as a neutral arbitrator in any arbitration under these rules in which that person has any financial or personal interest in the result of the arbitration. Any prospective or neutral arbitrator shall immediately disclose any circumstance likely to affect impartiality, including any bias or financial or personal interest in the result of arbitration. Upon receipt of this information from the arbitrator or any other source, the AAA shall communicate the information to the parties and ... [u]pon objection of a party to the contin-

tiff's contention that AAA rules do not allow for the disqualification of biased arbitrators, therefore, is unfounded and cannot defeat a motion to compel arbitration.

## V. *Validity of the Agreement to Arbitrate*

■ Finally, Plaintiff attacks the validity of the arbitration clause of the KMZ Partnership Agreement on the grounds that KMZ required her, as a non-capital partner, to sign the Agreement without any real opportunity for bargaining or negotiation over the terms and conditions of the Agreement. (Plaintiff's Opposition, at 7.) Plaintiff does not, however, assert that she was fraudulently induced to enter into the agreement to arbitrate.

In *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967), Prima Paint sought rescission of a consulting agreement with Flood and Conklin ("F & C") on the grounds that F & C had fraudulently represented that it was solvent and able to perform its contractual obligations when in fact it was not. *Id.* at 398, 87 S.Ct. at 1803. F & C moved to compel arbitration and stay the district court proceedings pursuant to an arbitration clause contained in the agreement. The Court held that Prima Paint could not defeat F & C's motion because it had failed to claim that the arbitration clause itself was fraudulently induced. *Id.* at 404, 87 S.Ct. at 1806; *see also Flender Corp. v. Techna–Quip Co.*, 953 F.2d 273, 277 (7th Cir.1992). Applying *Prima Paint*, the court in *Kahn v. Peak*, No. 91 C 7148, 1992 WL 142297, at *3, 1992 U.S.Dist. LEXIS 8710, at *6 (N.D.Ill. June 18, 1992) refused to entertain allegations of fraud in the inducement of a contract on a motion to stay proceedings since "[t]he arbitration clause that the Defendants seek to enforce was merely one of many provisions in the Partnership Agreement." *Id.*, 1992 WL 142297, at *3, at *6 ("only fraud in the inducement of an arbitration agreement may

be considered by a court faced with a request for a stay, while fraud in the inducement of a contract generally is an issue for the arbitrator," quoting *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. at 1805–06).

Similarly, in the present case, Plaintiff fails to allege fraud in the inducement of the arbitration clause. She merely alleges unequal bargaining power in the formation of the KMZ Partnership Agreement. (Plaintiff's Opposition, at 7.) The Court in *Gilmer* concluded, however, that "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer*, 500 U.S. at ——, 111 S.Ct. at 1655 (noting that agreements requiring arbitration of securities claims were upheld despite unequal bargaining power between the parties). Save for "the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract,'" courts should uphold the enforceability of arbitration agreements. *Gilmer*, 500 U.S. at ——, 111 S.Ct. at 1656 (quoting *Mitsubishi*, 473 U.S. at 627, 105 S.Ct. at 3354); *see also St. Mary's Medical Center, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 590 (7th Cir.1992) "Congress's goal in enacting the Arbitration Act was to place arbitration agreements 'upon the same footing as other contracts'"; citations omitted).[14]

In short, Plaintiff's challenge of validity of the arbitration clause cannot defeat a motion to compel arbitration because Plaintiff has not sufficiently pleaded that she was fraudulently induced into signing the Agreement containing the arbitration clause.

## VI. *Contractual Ambiguities: The Arbitration & Rights and Remedies Clauses*

■ Plaintiff next argues that article 21.12 [15] of the Agreement concerning the

---

ued service of a neutral arbitrator, the AAA, after consultation with the parties and the arbitrator, shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.

**14.** In addition, at a recent status hearing, Plaintiff's counsel pointed out that the Partnership Agreement was not in place until after some of the events of which she complains here had

taken place. Significantly, Plaintiff's execution of the Agreement at such time supports Defendants' contention that the agreement to arbitrate such disputes as these were not entered into blindly.

**15.** Article 21.12 of the KMZ Partnership Agreement reads as follows:

21.12 The rights and remedies of the Partnership and of the Partners shall not be mutu-

rights and remedies of partners conflicts with the arbitration clause in article 20.[16] Under Illinois law, *Duldulao v. St. Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 493, 106 Ill.Dec. 8, 13, 505 N.E.2d 314, 319 (1987), ambiguous contract language should be construed against the drafter. Therefore, she argues, because articles 20 and 21.12 are ambiguous when read together, the arbitration clause must be construed in her favor and against arbitration of her claims. (Plaintiff's Opposition, at 8–9.) As Defendants point out, Plaintiff confuses *rights* with the *forum* for adjudicating rights. It is not at all inconsistent to agree to arbitrate disputes under article 20, while also agreeing to preserve one's substantive rights, statutory or otherwise, as in article 21.12. Indeed, the Court in *Gilmer* recognized that " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " 500 U.S. at ——, 111 S.Ct. at 1652 (quoting *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 1354–55). In fact, although the parties do not explicitly address the issue, the Court in *Gilmer* makes clear that arbitration agreements such as the one in question need not bar ultimate redress in a judicial forum; while such agreements require that disputes be arbitrated first, they do not preclude a return to a federal forum in the event that arbitral procedures, for example, prove problematic. 500 U.S. at ——, 111 S.Ct. at 1654 (noting that courts may overturn arbitration decisions where there is evidence of biased or corrupt arbitrators). Similarly, in *Bender v. A.G. Edwards & Sons,*

*Inc.,* 971 F.2d 698, 700 (11th Cir.1992), the court concluded that *Gardner–Denver* stands for the limited "proposition" that 'there can be no prospective waiver of an employee's rights under Title VII.' " *Id.* at 699 (quoting *Schwartz v. Florida Board of Regents,* 807 F.2d 901, 906 (11th Cir.1987), in turn quoting *Gardner–Denver,* 415 U.S. at 51, 94 S.Ct. at 1021). The court explicitly allowed that Bender could revisit her Title VII sex discrimination claims against her supervisor in federal court "if the arbitration proceedings [were] somehow legally deficient." *Id.* at 700.

As discussed above, Article 20 of the Agreement clearly establishes an agreement to resolve disputes in an arbitral forum. Article 21.12, on the other hand, concerns the preservation of rights and remedies of the partners and partnership. Since these two provisions are not in conflict, it is not necessary to construe the arbitration clause against the drafter, KMZ.

## VII. *Waiver of the Right to Compel Arbitration*

At this court's invitation, the parties have briefed the issue of whether Defendants have waived their right to arbitration. Plaintiff argues that Defendants waived their right to compel arbitration by taking advantage of the liberal discovery rules available in federal court, obtaining sensitive and confidential psychiatric records and a lengthy deposition from Plaintiff's treating psychiatrist, Dr. Fine,[17] before moving to compel arbitration and stay the proceedings. (Plaintiff's Waiver Memorandum, at 3–6.) Defendants counter that Dr. Fine's records were central to their

ally exclusive; that is, the exercise of one or more of the provisions hereof shall not preclude the exercise of any other provisions hereof. Each of the Partners confirms that damages at law may be an inadequate remedy for a breach or threatened breach of this Agreement and agrees that, in the event of a breach or threatened breach of any provisions hereof, the respective rights and obligations hereunder shall be enforceable by specific performance, injunction or other equitable remedy. Nothing herein contained is intended to, nor shall it limit or affect, any rights or rights at law or by

statute or otherwise of any party aggrieved as against any Partner for breach or threatened breach of any provision hereof. The Partners agree that the respective rights and obligations of the Partners shall be enforceable in equity as well as at law or otherwise.

16. *See supra* note 2.

17. Plaintiff was on medical leave from KMZ on the advice of her treating psychiatrist, Dr. Fine, whose treatment commenced in February of 1992 and continues to the present. (Plaintiff's Waiver Memo at 1 n. 1, 6 n. 2.)

defense against the motion for a preliminary injunction (ordering reinstatement of Plaintiff's paid medical leave status) which Plaintiff filed shortly after her complaint. Defendants urge that Plaintiff was informed throughout the proceeding that Defendants wished to arbitrate her claims. (Defendants' Supplemental Brief in Support of Defendants' Motion to Compel Arbitration and to Stay Proceedings (hereinafter "Defendants' Supplemental Brief"), at 2–5). In any event, after Plaintiff refused arbitration and Defendants informed her of their plans to file a motion to compel, Defendants assert, Plaintiff's counsel agreed that the parties should proceed with discovery. (Defendants' Supplemental Brief, at 5; see Mahoney Aff. and Letter from Warner to Templeton of 2/23/93, Ex. D to Defendants' Supplemental Brief.)

 Although the right to enforce an agreement to arbitrate is waivable, waiver is not lightly inferred; the strong federal policy favoring enforcement of arbitration agreements impresses upon a party asserting waiver a 'heavy burden.' St. Mary's Medical Center, Inc. v. Disco Aluminum Products Co., 969 F.2d 585, 590 (7th Cir.1992) (citations omitted); see also Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 641 (7th Cir. 1981). In St. Mary's Medical, the Seventh Circuit clarified its standard for determining whether contractual arbitration rights are waived. When determining waiver, which can be either express or inferred, the "essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate." St. Mary's Medical, 969 F.2d at 587–88 (citations omitted). Prejudice resulting from the alleged delay is one factor to consider, but is not dispositive. 969 F.2d at 590.

Even in those courts in which a showing of prejudice is essential to waiver, pre-trial discovery is not presumptively prejudicial. In Dancu v. Coopers & Lybrand, 778 F.Supp. 832, 834–35 (E.D.Pa.1991), aff'd without opinion, 972 F.2d 1330 (3rd Cir.1992), for example, the court held that an exchange of a set of interrogatories, requests for documents, and two depositions was not sufficiently prejudicial to warrant waiving the right to compel arbitration. More recently,

in Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 89 Civ. 3749, 1992 WL 245506 (S.D.N.Y. Sept. 14, 1992), participation in limited pretrial discovery, inter alia, was held "not [to be] the type of pretrial litigation which results in the waiver of arbitration" because it did not involve substantial issues on the merits sufficiently prejudicial to the party opposing arbitration. Id. at *4. In Zwitserse Maatschappij Van Levensverzekering en Lijfrente v. ABN International Capital Mkts. Corp., 996 F.2d 1478, 1480 (2d Cir.1993), the Second Circuit affirmed a finding of waiver where the party seeking to compel arbitration had instigated deposition-type discovery in the Netherlands, for the purpose of preserving testimony of a foreign witness whose attendance could not be compelled at arbitration hearings. Id. The court concluded that the deposing party unfairly profited thereby, causing the kind of prejudice that outweighs the strong federal policy favoring arbitration. Id.

 Engaging in discovery will not necessarily result in waiver of arbitration rights, however. Cohen v. E.F. Hutton & Co., No. 87 C 5678, 1990 WL 36878, at *7 (N.D.Ill. March 14, 1990). Where discovery is limited, "causing a minimal financial outlay, or where the type of discovery will not materially affect the arbitration, prejudice has not been found." Id. (citing Page v. Moseley, Hallgarten, Estabrook & Weeden, 806 F.2d 291, 294 (1st Cir.1986)). In the present case, discovery was limited to the subpoena of Dr. Fine's notes concerning Plaintiff's psychiatric treatment and a single deposition during which Dr. Fine primarily interpreted those notes. (Defendants' Supplemental Brief, at 11.) Defendants point out that they pursued this discovery solely in response to Plaintiff's motion for injunctive relief (which was denied by this court) in which she asked the court to enjoin Defendants from refusing to pay Plaintiff certain short-term disability benefits. (Id. at 2–3; see Plaintiff's Petition for Preliminary and Permanent Injunction.)

As of the time of Dr. Fine's deposition, Plaintiff was clearly aware of Defendants' desire to proceed to arbitration. Defendants had not only made repeated requests of

Plaintiff to arbitrate (Defendants' Supplemental Brief, at 5; *see* Mahoney Aff. and Letter from Warner to Templeton of 2/23/93, Ex. D to Defendants' Supplemental Brief), but had also pleaded the right to arbitrate as a Tenth Affirmative Defense. As Defendants point out, it was not until February 16, 1993 that Plaintiff finally responded to Defendants' written request for a response to their demand for arbitration made on February 4, 1993.[18] (Defendants' Supplemental Brief, at 4–5.) Defendants filed their motion to compel a week thereafter. (*Id.* at 5.) In comparison, Defendants' delay in filing does not appear to be the type of calculated delay sufficient to warrant waiver and override the federal government's strong pro-arbitration policy as that found in *St. Mary's Medical Center, Inc. v. Disco Aluminum Products Co.,* 969 F.2d 585, 590 (7th Cir.1992), or in other cases cited by Plaintiff. *See Van Ness Townhouses v. Mar Industries Corp.,* 862 F.2d 754, 758–59 (9th Cir.1988) (waiver found where defendant actively litigated pleadings and motions, approved a pre-trial conference order, and moved to compel arbitration two years later after filing of complaint); *Singer v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1141, 1143–44 (D.C.Mass.1985) (waiver found where defendants raised arbitration issue when discovery was near completion and the trial date was set); *United States v. S.T.C. Construction Co.,* 472 F.Supp. 1023, 1024–25 (E.D.Penn.1979) (waiver found where defendants answered complaint, asserted counterclaim, and waited until trial preparations reached advanced stage before demanding arbitration); *see also National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.,* 821 F.2d 772, 773–75 (D.C.Cir. 1987) (waiver found where defendants participated in extensive discovery for over two years, then moved to compel arbitration three years after suit was filed and after denial of his motion for summary judgment). Nor is the information Defendants discovered likely to be sufficiently prejudicial to Plaintiff's litigation on the merits. *See Cohen,* 1990 WL 36878, at *7 ("depositions of non-party witnesses ... is not the type of

discovery that is likely to have a material effect"). Considering all of the circumstances, Defendants cannot be said to have acted in a manner sufficiently inconsistent with their right to arbitrate as to warrant waiver of that right.

### CONCLUSION

Article 20 of the KMZ Partnership Agreement requiring arbitration of all claims is enforceable as applied to Plaintiff's Title VII and § 1981 claims pursuant to the strong federal policy favoring enforcement of arbitration agreements embodied in the Federal Arbitration Act. The Agreement is covered by the FAA and is not excluded by virtue of the FAA's exclusionary clause since KMZ and Plaintiff are not actively engaged in commerce involving interstate transportation. The arbitration procedures provided in the KMZ Partnership Agreement are adequate. When read together, no ambiguities exist between the arbitration clause in the Agreement and the clause concerning partners' rights and remedies sufficient to defeat the arbitration agreement. Finally, Defendants have not waived their right to arbitration by engaging in limited discovery in defense of Plaintiff's motion for injunctive relief and with full disclosure of their wish to arbitrate; such action is not inconsistent with their right to arbitrate.

Date: September 30, 1993

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable George M. Marovich. *See* FED.R.CIV.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir.1990).

---

**18.** Defendants raised the issue of arbitration during negotiations between the parties which took place in November and December of 1992, months before their written demand. (Defendants' Supplemental Brief, at 4.)