IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20481
_____

CATALINA GARCIA; AGNES L MANNING; DONNA R. BROWN;
JACQUELINE R GIBSON

                    Plaintiffs - Appellees,

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                    Defendant - Appellant

------------------------------

GENEVA CHATMAN

                    Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                    Defendant - Appellant

------------------------------

MARY J WRIGHT

                    Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                    Defendant - Appellant

------------------------------

THERESA KENNEY; RONALD DOLBY; JANIS FOSTER; STELLA
CHAMBERS; ELTON CRAWFORD; CYNTHIA EDWARDS; GLORIA
ROBERTS FORD; GLORIA HERRERA; DUANA HILL; ANGELA
JACKSON; VICKIE MOORE HARRIS; LA RHONDA PETITT; SOCCORA
DAVID POWELL; ANA RIVAS; HORTENCIA ROSALES; ADELINA
SERRATO; MARILYN SIMMONS; VERONDA HEARNE STEWART;

SHARON STEWART; MARTHA VALLEJO; JANICE WEBSTER; MELROSE WEDDERBURN; PAULA SAMUELS; SHELLENA WOFFORD; SHIRLEY BOLDEN; DORIS DURHAM; FRED GARZA; JUDY LAWSON; ESTER MORRIS; DONNA OWENS; JOSEPH OZENNE; JEAN RUNCIE;

                    Plaintiffs - Appellees

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                    Defendant - Appellant

------------------------------

WILLIE J SKIPPER

                    Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                    Defendant - Appellant

------------------------------

PATRICIA REYES; DELINDA ROGERS; ANTHONY SMITH; CYNTHIA VAUGHN; MANUELA SILVA; CAROLYN MCCRAY; SHARI PATTERSON; VESHAE WILLIS; LUPE STOUGHTON; BETTY HOPSON; KATIE VASSER; DIANE HAYNES; JANE DOE; THELMA DEMERY; REA MACHETTE; JOAN PRINCE; LOTTIE SEWELL; EULA SHORTER; EDDIE SIMLIN; GEORGE SINGLETON; EUNICE TAYLOR;

                    Plaintiffs - Appellees

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                    Defendant - Appellant

------------------------------

HATTIE D FREENY

                    Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

2

Defendant - Appellant

------------------------------

MARTHA UDDIN

Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

Defendant - Appellant

------------------------------

VICKIE HARRIS-MOORE

Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

Defendant - Appellant

------------------------------

PAMELA C MOSQUERA; SHARON BOOKMAN; MIGUEL MARTINEZ; VANESSA MARTIN; CARMEN MERCHAN; BENNIE STEWART; SAKENNA REED; BETTY SHEPARD; GLORIA SPURLOCK

Plaintiffs - Appellees

V.

HOUSTON NORTHWEST MEDICAL CENTER INC

Defendant - Appellant

------------------------------

ELEANOR C TONGEE

Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

Defendant - Appellant

3

----------------------------------

MARIE H MCCULLOUGH

                        Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                        Defendant - Appellant

----------------------------------

PEGGY MIGGINS

                        Plaintiff - Appellee

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                        Defendant - Appellant

----------------------------------

GAMSTER W FRANKLIN; CLAUDETTE B WAIR; ANNETTE REED
SURGERS; VERONICA THOMAS; KEITH A DENMAN; CHERYL
CHATMAN; GERTRUDE M PERRY; CAROL BEATRICE JOHNSON-
GREENE; MARGARET WILLIAMS; FURNELL BROWN; JOYCE A
SCOTT; ANN HUTCHINS; MARILYN ROBERTS; JUDY EDISON

                        Plaintiffs - Appellees

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

----------------------------------

DAVID SALDANA

                        Plaintiffs - Appellees

v.

HOUSTON NORTHWEST MEDICAL CENTER INC

                        Defendant - Appellant

4

April 5, 1996

Before KING, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Houston Northwest Medical Center (the "Hospital") appeals the order denying its motion to stay the action brought by the appellees pending arbitration.  For the reasons assigned, we vacate and remand.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On October 4, 1984, EEOC Commissioner Fred W. Alvarez filed an administrative charge of discrimination against the Hospital. The resulting investigation culminated in a decision by the EEOC finding reasonable cause to believe that certain allegations in the charge were true.

The EEOC entered into a conciliation agreement (the "Agreement") with the Hospital on May 25, 1990.  The Agreement was intended to remain in effect for three years.  It contained two primary components:  affirmative action and reporting requirements, and procedures for evaluating individual claims of disparate treatment and implementing appropriate remedies if the claimants met the specified criteria.  The section of the

---

[*]   Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Agreement that outlined the individual claims procedure included an arbitration clause providing that, "[i]f any dispute arises between the Company and the Commission in determining the validity of a claim, an independent Arbitrator shall make the final and binding determination."

The Agreement also contained a separate section addressing dispute resolution. The dispute resolution section began with a subsection stating, "[i]f any dispute arises between the Company and the Commission . . . the Arbitrator(s) shall make the final binding determination by reference to the standards of review set forth herein." The dispute resolution section went on in another subsection to provide that "[i]t is expressly agreed that if either party concludes that this Agreement has been materially breached, that party may bring an action in the appropriate federal court to specifically enforce this Agreement." This provision was followed by a series of conditions, including communication of a notice of noncompliance by the party alleging breach of the Agreement to the other party and attempted dispute resolution through "discussion, conference, investigation, correspondence, and other appropriate means," which were required to be satisfied before either party could bring suit on the Agreement.

Pursuant to the terms of the Agreement, the Hospital identified 2,887 members of the aggrieved class covered by the Commissioner's charge, mailed notices to them explaining their rights under the Agreement, and provided the EEOC with

6

information on each class member.  Of this group, 369 persons filed claims under the Agreement.  In June 1994, the EEOC concluded that the Hospital had breached the Agreement and responded by issuing Notices of Right to Sue to the class members previously named by the Hospital.

On July 1, 1994, Catalina Garcia, who had previously received notice that she was part of the aggrieved class under the Commissioner's charge and had filed a claim under the Agreement, filed a complaint in federal district court alleging that the Hospital had discriminated against her and a class of similarly situated persons in violation of Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.  Two months later, Garcia amended the complaint to include Donna R. Brown, Jacqueline R. Gibson, and Agnes L. Manning as named plaintiffs.  She later amended her complaint a second time to include a breach of contract claim based upon the Agreement.

The Hospital filed a motion to stay the litigation pending arbitration pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.  Without addressing its merits, the district court denied the motion.[1]  Upon several motions by the Hospital, the district court subsequently consolidated the actions of all individuals who had brought racial and national origin discrimination claims against the Hospital (collectively

_____

[1]    The district court later stated, "It's not that I don't think it's meritorious; it's that I can't determine whether or not it's meritorious under the circumstances, at this point anyway."

7

"appellees") with the action by Garcia, Brown, Gibson, and Manning designated as lead case.

Prior to consolidation, Garcia, Brown, Gibson, and Manning had moved for class certification, and class certification hearings were held in November 1994. In spite of the Hospital's opposition to class certification, the court certified three classes of plaintiffs: African-Americans and Hispanics denied employment, African-Americans and Hispanics denied promotions, and African-Americans terminated allegedly because of their race. The certified classes were broader than the class covered by the Agreement, because, in addition to those covered by the Agreement, the certified classes included persons denied promotions and persons denied employment or terminated after the Agreement became effective on July 26, 1990.

The Hospital renewed its motion for a stay pending arbitration. The court denied the motion, and the Hospital timely appealed.

## II. ANALYSIS

The district court's order denying the Hospital's motion to stay litigation of this action pending arbitration consisted of one sentence and contained no factual conclusions or legal analysis. As such, the order is effectively unreviewable. Without expressing any opinion as to the proper resolution of the Hospital's motion, we vacate the district court's order and

8

remand with instructions to reconsider and provide detailed reasons for whatever conclusion the court ultimately reaches.

In order to be reviewable, the district court's ruling on the Hospital's motion to stay must address two primary issues. First, it must determine arbitrability, i.e., the scope of the Agreement and whether its arbitration provisions bind any of the class members with respect to their contractual or statutory claims. Second, the court must address the appellees' argument that the arbitration provisions of the Agreement did not survive the Agreement's termination.

## A. Scope of the Agreement

Resolution of the Hospital's motion will require a detailed series of conclusions relating to the scope of the Agreement and the meaning and effect of its dispute resolution provisions.

Under the FAA, the scope of the Agreement is governed by state contract law to the extent that the applicable state contract law does not treat arbitration agreements any differently than other contracts. See Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987); Progressive Cas. Ins. Co. v. C.A. Reasegurado Nacional De Venezuela, 991 F.2d 42, 46 (2nd Cir. 1993). "When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995). In determining the scope and effect of the

9

Agreement, the district court should analyze the appellees' contract and statutory claims independently.

### 1. Contract claims

Given that the Agreement is a contract between the EEOC and the Hospital, any recovery on the part of the appellees under the Agreement will be predicated upon a determination that the appellees are third party beneficiaries of the contract. Under Texas contract law, third party beneficiaries of a contract may acquire no greater rights than the promisee under the contract. See S & H Supply Co. v. Hamilton, 418 S.W.2d 489, 493 (Tex. 1967). The third party beneficiary stands in the shoes of the contracting party in seeking performance. United States v. Industrial Crane & Mfg. Corp., 492 F.2d 772, 774 (5th Cir. 1974). Thus, if the district court determines that any of the appellees are third party beneficiaries of the Agreement, then it must determine the scope of the EEOC's rights under the Agreement in order to determine whether arbitration is a condition precedent to the recovery of those appellees under the Agreement.

A determination of the arbitrability of the appellees' claims under the Agreement will require the resolution of a number of subsidiary issues. First, the district court must determine the scope and effect of each of the arbitration provisions in the Agreement, bearing in mind that it should avoid interpreting any provision of the contract in a manner that renders any other provision meaningless. See R & P Enterprises

10

v. LaGuarta, Gavrel, & Kirk, Inc., 596 S.W.2d 517, 518-19 (Tex. 1980).

Second, as noted above, the dispute resolution portion of the Agreement contained a provision outlining the parties' rights to sue for breach of the Agreement. The district court must determine whether the EEOC's right to sue for breach of the Agreement under this provision, as opposed to its obligation to arbitrate under other provisions of the Agreement, also constitutes a right for the appellees to sue for breach of the Agreement as third party beneficiaries.

### 2. Statutory claims

In determining whether any of the appellees' statutory claims under Title VII and § 1981 are arbitrable, the district court should express its interpretation of the language of § 102 D of the Agreement, which provides that

> [t]his agreement resolves all issues between the Commission and . . . [the Hospital] arising out of charge numbers 064850084 and 064841059 as to acts and practices occurring prior to the effective date of this agreement.

The court should determine (1) whether any of the statutory claims constitute "issues between the Commission" and the Hospital arising out of the identified charges, and (2) whether the Agreement is legally capable of binding the appellees with respect to their attempts to vindicate their statutory rights.

### a. Title VII

11

In determining the legal effect of the Agreement on the appellees' Title VII claims, the court should bear in mind that a ripe Title VII action requires the filing of an administrative charge of discrimination with the EEOC and a timely claim in federal district court once the EEOC issues a Notice of Right to Sue. See BARBARA L. SCHLEI & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 1092-93 (2d ed. 1990). Before issuing a Notice of Right to Sue, the EEOC must attempt conciliation with the party against whom the charge is made. 29 C.F.R. § 1601.26 (1994). However, a conciliation agreement cannot bind the charging party unless the charging party agrees to it. Flowers v. Local No. 6, Laborers Int'l Union of North America, 431 F.2d 205, 207 (7th Cir. 1970).

In this case, the charging party was the EEOC Commissioner rather than a private party. The appellees' Title VII claims are made pursuant to the Commissioner's charge.[2] As such, the district court must determine whether any of the appellees are restricted in bringing those claims by virtue of the arbitration provisions in the Agreement. Furthermore, the district court must evaluate the appellees' right to sue (as distinguished from being compelled to arbitrate) in light of the provision in the

---

[2] The EEOC's administrative regulations provide that, "[w]here the Commission has found reasonable cause to believe that Title VII . . . has been violated, has been unable to obtain voluntary compliance with Title VII . . ., and where the Commission has decided not to bring a civil action against the respondent, it will issue a notice of right to sue to . . . any member of the class" covered by the charge. 29 C.F.R. § 1601.28(b) (1994).

dispute resolution section of the Agreement that defines the EEOC's right to sue for breach of the Agreement.

### b. Section 1981

The district court must also determine whether any of the appellees' § 1981 claims are arbitrable under the Agreement. Section 1981 claims are not subject to the administrative requirements of Title VII. Johnson v. Railway Express Agency, Inc. 421 U.S. 454, 460 (1975). Nevertheless, some courts have held that § 1981 claims fall within the ambit of arbitration clauses in employment contracts. See, e.g., Williams v. Katten, Muchin & Zavis, 837 F. Supp. 1430, 1436-37 (N.D. Ill. 1993). However, in such situations, the party who was forced to arbitrate the § 1981 claim was a party to the employment contract in question, and this is not the case with the appellees and the Agreement.

Regardless of the district court's legal conclusion on the arbitrability of the appellees' § 1981 claims, the court will have discretion to stay the § 1981 claims because the discovery related to those claims will be virtually identical to that necessary for the Title VII claims and claims under the Agreement. In re Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 755 (5th Cir. 1993).

Should the district court determine that any of the claims in question, statutory or contractual, fall within the purview of the arbitration provisions of the Agreement, then it lacks

13

discretion to deny a stay pending arbitration as to those claims. Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co., 801 F.2d 748, 751 (5th Cir. 1986). When the issues in a case fall within the scope of a written arbitration agreement, § 3 of the FAA mandates a stay of legal proceedings. Hornbeck, 981 F.2d at 754.


**B. Survival of the arbitration clause**

The appellees contend that the arbitration provisions of the Agreement no longer have any legal effect because they expired along with the Agreement in 1993. The court must determine whether this issue--the continued legal effect of the arbitration clause after the termination of the Agreement--is a matter for judicial resolution or resolution through arbitration. See First Options; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967); Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp., 797 F.2d 238 (5th Cir. 1986) .

If the court decides that the issue of whether the arbitration provisions survived the termination of the Agreement is a matter for judicial resolution, then it may find an analysis of case law surrounding expired collective bargaining agreements to be a useful starting point in resolving the issue. In the context of collective bargaining agreements, the Supreme Court has held that "structural provisions relating to remedies and dispute resolution--for example, an arbitration provision--may in some cases survive in order to enforce duties arising under the

14

contract . . . . [The Court presumes] as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement." Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 208 (1991). Rebutting this presumption that an arbitration clause survives the termination of the underlying collective bargaining agreement requires either express rebuttal or rebuttal by clear implication from the language of the agreement. Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union, 430 U.S. 243, 255 (1977). If the court ultimately decides to resolve the issue of whether the arbitration provisions survived the termination of the Agreement, then it should determine whether presumptions similar to those that operate in interpreting collective bargaining agreements also apply in interpreting Title VII conciliation agreements.

Because the EEOC was a principal architect of the Agreement, the district court would be well advised to request the submission of an amicus brief from the EEOC establishing its position on the questions of law at issue in the resolution of the Hospital's motion to stay pending arbitration. To say the least, the court is entitled to the benefit of the EEOC's considered views on those questions.

## III. CONCLUSION

For the reasons outlined above, we VACATE the district court's order and REMAND with instructions to the district court

15

to reconsider its order and provide legal analysis and factual conclusions sufficient to facilitate effective review.